**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL AMADOR, | ) | No.  ED CV 08-628-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 15, 2008, seeking review of the Commissioner's denial of his application for Supplemental Security Income.  The parties filed Consents to proceed before the undersigned Magistrate Judge on May 28, 2008, and June 24, 2008.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 13, 2009, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on May 10, 1955. [Administrative Record ("AR") at 89, 103.] He has a tenth grade education, and has past relevant work experience as a factory worker. [AR at 115-16, 118.]

On January 5, 2006, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been unable to work since August 1, 2005, due to schizophrenia, panic attacks, and depression. [AR at 55, 64, 89-94, 110-20, 133-41.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 36-37, 51-68.] A hearing was held on September 21, 2007, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 8-35.] A medical expert also testified. [AR at 15-17, 32-34.] On October 10, 2007, the ALJ determined that plaintiff was not disabled. [AR at 39-50.] Plaintiff requested review of the hearing decision. [AR at 5-7.] When the Appeals Council denied plaintiff's request for review on April 3, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 2-4.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2

1  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

2  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

3  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

4

5                                          **IV.**

6                       **THE EVALUATION OF DISABILITY**

7          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

8  to engage in any substantial gainful activity owing to a physical or mental impairment that is

9  expected to result in death or which has lasted or is expected to last for a continuous period of at

10  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

11

12  **A.       THE FIVE-STEP EVALUATION PROCESS**

13          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

14  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

15  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

16  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

17  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

18  substantial gainful activity, the second step requires the Commissioner to determine whether the

19  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

20  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

21  If the claimant has a "severe" impairment or combination of impairments, the third step requires

22  the Commissioner to determine whether the impairment or combination of impairments meets or

23  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

24  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

25  If the claimant's impairment or combination of impairments does not meet or equal an impairment

26  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

27  sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

28  and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

1 past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

2 case of disability is established. The Commissioner then bears the burden of establishing that the

3 claimant is not disabled, because he can perform other substantial gainful work available in the

4 national economy. The determination of this issue comprises the fifth and final step in the

5 sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

6 at 1257.

7

8 **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

9          In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

10 gainful activity since January 5, 2006, the date of the application. [AR at 45.] At step two, the ALJ

11 concluded that plaintiff does not have a "severe" impairment or combination of impairments. [Id.]

12 Accordingly, the ALJ found plaintiff not disabled, and did not complete the five-step sequential

13 evaluation. [AR at 49-50.]

14

15                                          **V.**

16                              **THE ALJ'S DECISION**

17          Plaintiff contends that the ALJ: (1) failed to properly consider the treating therapist's opinion;

18 (2) failed to properly consider the severity of plaintiff's depression; (3) improperly rejected plaintiff's

19 mental impairment based on lack of treatment for depression; (4) failed to properly consider

20 plaintiff's testimony; and (5) failed to properly consider the lay witness testimony. Joint Stipulation

21 ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the

22 matter for further proceedings.

23 /

24 /

25 /

26 /

27 /

28 /

                                            4

**MEDICAL OPINION/MENTAL IMPAIRMENT**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion set forth in the Adult Psychiatric Evaluation completed on September 5, 2007.[1]  Joint Stip. at 3-4.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability.  See Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'"  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830.  Where the treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or

---

[1]   Plaintiff in the Joint Stipulation incorrectly identifies the author of the Adult Psychiatric Evaluation as Abbe G. DeLong, when in fact it apparently was completed by psychiatrist Dr. Imelda Alfonso, whose signature at the bottom of page 182 is the only medical name referenced therein.  Joint Stip. at 3.  [AR at 181-82.]  As such, the Court herein will address whether the ALJ properly considered the opinion of Dr. Alfonso.  The Court notes that both Dr. Alfonso and Ms. DeLong signed the Client Recovery Plan and Diagnosis forms, which were completed in connection with the evaluation.  [AR at 183, 185.]

decision for the weight [given to the] treating source's opinion"); Social Security Ruling[2] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. See id. at 830-31.

On September 5, 2007, Dr. Alfonso performed an initial Adult Psychiatric Evaluation of plaintiff.  In the evaluation, Dr. Alfonso noted that plaintiff's: (1) appearance/hygiene was disheveled; (2) behavior was withdrawn; and (3) mood/affect was depressed, anxious, and constricted/restricted.  [AR at 182.]  Dr. Alfonso further noted that plaintiff had auditory hallucinations and paranoid/persecutory delusions. [Id.] Dr. Alfonso diagnosed plaintiff with major depressive disorder, recurrent, severe with psychotic features.  She assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 45.[3] [AR at 182, 185.] Dr. Alfonso prescribed plaintiff the following medications: Risperdal, Lexapro, and Ambien,[4] and referred plaintiff to a

---

[2]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[3]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000).  A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 34.

[4]   Risperdal is used to treat certain mental/mood disorders.  Lexapro is an anti-depressant used to treat depression and anxiety.  Ambien is used to treat sleep problems

6

1    permanent psychiatrist for follow up. [AR at 182.] In the Client Recovery Plan form signed by both

2    Dr. Alfonso and Ms. DeLong, plaintiff's dsyfunction rating was noted as severe.  [AR at 183.]  In

3    the Care Necessity form completed by Ms. DeLong on September 4, 2007, plaintiff was noted as

4    having a qualified mental health diagnosis, and a significant impairment in an important area of

5    life functioning and a probability of a significant deterioration in an important area of life

6    functioning.  [AR at 184.]  Ms. DeLong indicated that planned interventions "will address

7    impairment conditions," and "are expected to significantly diminish the impairment," or "prevent

8    significant deterioration in an important area of life functioning." [AR at 184.] Ms. DeLong further

9    indicated that "the condition would not be responsive to treatment by a physical healthcare-based

10   provider." [AR at 184.]

11        As an initial matter, a review of the record indicates that while Dr. Alfonso examined

12   plaintiff, she did not have an ongoing treatment relationship with him.[5]  See 20 C.F.R. §§

13   404.1502, 416.902.  Therefore, Dr. Alfonso is considered an examining source, and her opinion

14   can only be rejected for specific and legitimate reasons supported by substantial evidence.  See

15   id.; see also 20 C.F.R. §§ 404.1527, 416.927.

16        Although the ALJ in the decision did not explicitly reject Dr. Alfonso's findings in the Adult

17   Psychiatric Evaluation, he made the following assertions that appear to be the basis for

18   questioning Dr. Alfonso's findings: (1) there is no evidence of intensive mental health treatment

19   or follow up treatment after the initial evaluation; and (2) the diagnoses in the initial evaluation are

20   based on plaintiff's self-reported symptoms. [AR at 49.] Plaintiff contends that the ALJ improperly

21   considered the findings in the Adult Psychiatric Evaluation.  As discussed below, the Court agrees

22   with plaintiff.

23

24

25   (insomnia). http://my.webmd.com/drugs/index-drugs.aspx (search "Find A Drug," by "Drug Name";
26   then enter the name of the drug; then select the appropriate hyperlink if there are multiple forms of
     the drug; then follow "Uses" tab).
27

28        [5]   Dr. Alfonso examined plaintiff on one occasion and referred him to a permanent
     psychiatrist for follow up treatment.  [AR at 181-82.]

1    The reasons provided by the ALJ to disregard Dr. Alfonso's opinion concerning plaintiff's

2    mental condition based on lack of treatment are insufficient.[6]   The Ninth Circuit has recognized

3    that depression is "one of the most underreported illnesses in the country because those afflicted

4    often do not recognize that their condition reflects a potentially serious mental illness." Nguyen

5    v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); see, e.g., Wilder v. Apfel, 153 F.3d 799, 802 (7th

6    Cir. 1998) (describing depression as "a notoriously underreported disease").   "The fact that [a]

7    claimant may be one of millions of people who did not seek treatment for a mental disorder until

8    late in the day is not a substantial basis on which to conclude that [the psychologist's] assessment

9    of [the] claimant's condition is inaccurate." See Nguyen, 100 F.3d at 1465; see also Blankenship

10   v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989) ("it is a questionable practice to chastise one with

11   a mental impairment for the exercise of poor judgment in seeking rehabilitation"); Elbert v.

12   Barnhart, 335 F. Supp. 2d 892, 912 (E.D. Wis. 2004) ("lack of mental health treatment does not

13   automatically allow the ALJ to conclude that there is no mental impairment").   Here, plaintiff first

14   sought mental health treatment from Dr. Alfonso approximately one month prior to the date of the

15   ALJ's decision and was referred by Dr. Alfonso to a permanent psychiatrist after the initial

16   evaluation.   [AR at 181-82.]   At the hearing on September 21, 2007, plaintiff testified that he was

17   hearing voices, and feeling scared and depressed.   [AR at 26.]   He also testified that he only

18   recently sought mental health treatment because it was becoming more difficult for him "to live a

19   normal life" given his mental problems.   [AR at 27-28.]   The ALJ erred by relying on lack of

20   treatment to discount Dr. Alfonso's opinion.

21         Moreover, the ALJ's conclusion that the diagnoses in the Adult Psychiatric Evaluation are

22   all based on plaintiff's self-reported symptoms is inaccurate, and thus does not support his non-

23   severity determination.   "Mental disorders cannot be ascertained and verified as are most physical

24   illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical

25   manifestations of mental illness.   A strict reading of the statutory requirement that an impairment

26   _____

27         [6]   The ALJ in the decision found that the record does not reflect any inpatient
     hospitalization for an acute mental health crisis, intensive treatment, or follow up treatment.   [AR
28   at 49.]

8

be 'demonstrable by medically acceptable clinical and laboratory diagnostic techniques' is inappropriate in the context of mental illnesses." See Hartman v. Bowen, 636 F. Supp. 129, 132 (N.D. Cal. 1986) (citations omitted).   Rather, when mental illness is part of a disability claim, "clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.   The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique."   See Christensen v. Bowen, 633 F. Supp. 1214, 1220-21 (N.D. Cal. 1986) (citation omitted); see also Hartman, 636 F. Supp. at 132; Day, 522 F.2d at 1156 ("[d]isability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings."); Montijo v. Secretary of Health and Human Services, 729 F.2d 599, 601 (9th Cir. 1984) (while objective diagnoses and observations are the most important parts of the physicians' reports, the ALJ's reliance on the inability of the physicians to support their findings with objective laboratory findings does not constitute a legally sufficient reason for rejecting their conclusions) (citing Day, 522 F.2d at 1156-57); Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) (merely to state that a medical opinion is not supported by enough objective findings "does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

Here, in the Adult Psychiatric Evaluation, Dr. Alfonso noted plaintiff's chief complaints as increased depression and auditory hallucinations. [AR at 181.] She obtained plaintiff's psychiatric and medical history, and performed a mental status examination.   [AR at 181-82.]   The mental status examination showed the following abnormalities: depressed, anxious, and constricted/restricted mood, poor eye contact, withdrawn behavior, auditory hallucinations, and paranoid/persecutory delusions.   [AR at 182.]   Based on her evaluation of plaintiff, Dr. Alfonso diagnosed plaintiff with major depressive disorder, recurrent, severe with psychotic features and hypertension, and prescribed psychotropic medications to plaintiff to treat his mental condition. [AR at 182.]   Thus, not only did Dr. Alfonso rely on plaintiff's subjective symptoms to support her

9

1    opinion,[7] she also relied on her own observations of plaintiff during the evaluation and the clinical

2    findings of the mental status examination.[8]  See Sprague, 812 F.2d at 1232 (opinion based on

3    clinical observations supporting diagnosis of depression is competent psychiatric evidence); see,

4    e.g., Clester v. Apfel, 70 F. Supp. 2d 985, 990 (S.D. Iowa 1999) (results of mental status

5    examination provide basis for diagnostic impression of psychiatric disorder, just as results of

6    physical examination provide basis for diagnosis of physical illness or injury).

7         In addition, Dr. Alfonso assessed plaintiff with a GAF score of 45, which the ALJ failed to

8    discuss in the decision.  [AR at 182.]  An ALJ must consider all of the relevant evidence in the

9    record and may not point to only those portions of the record that bolster his findings.  See Gallant

10   v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the

11   competent evidence in the record in order to justify her conclusion); see also Fiorello v. Heckler,

12   725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every

13   conflicting shred of medical testimony," she cannot simply selectively choose evidence in the

14   record that supports her conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982)

15   ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite

16   conclusion.") (citation omitted); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The

17   ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are

18   favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir.

19   1984)).  While a GAF score may not have a "direct correlation" to the Social Security severity

20   requirements in the Listings (see Revised Medical Criteria for Evaluating Mental Disorders and

21   Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any

22

23   _____

     [7]   "A patient's report of complaints, or history, is an essential diagnostic tool," and "[a]ny
24   medical diagnosis must necessarily rely upon the patient's history and subjective complaints."  See
     Flanery v. Chater, 112 F.3d 346, 350 (8th Cir.1997) (citation omitted).

25   [8]   Objective medical evidence means "medical signs" and "laboratory findings" as defined
26   in 20 C.F.R. §§ 404.1528(b), (c) and 416.928(b), (c).  See 20 C.F.R. §§ 404.1529(a), 416.929(a).
     Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart
27   from a claimant's symptoms.  20 C.F.R. §§ 404.1528(b), 416.928(b).  Psychiatric signs are
     medically demonstrable phenomena that indicate specific psychological abnormalities, e.g.,
28   abnormalities of behavior, mood, thought, memory, orientation, development, or perception.  Id.

authority indicating that Dr. Alfonso's assessment of a GAF score of 45 and its implications may be rejected without sufficient reason.  See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); see also Sorenson v. Astrue, 2008 WL 1914746, at *18 (N.D. Iowa Apr. 28, 2008) (a GAF score is used by medical professionals "'to consider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness'") (citations omitted); Blake v. Astrue, 2008 WL 2224847, at *6 (D. Kan. May 27, 2008) (a GAF score of fifty or less may suggest an inability to keep a job); Dempster v. Astrue, 2008 WL 4381541, at *2 (C.D. Cal. Sept. 23, 2008) ("GAF scores can be probative of a claimant's mental health on a given day and should at least be acknowledged by the ALJ"); Escardille v. Barnhart, 2003 WL 21499999, at *5-6 (E.D. Pa. June 24, 2003) (ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment" was error).  As such, the ALJ erred by failing to properly consider the opinion of Dr. Alfonso as a whole.

Although the ALJ in the decision agreed with the consultative and nonexamining State Agency physicians' opinions that plaintiff did not have a severe mental impairment [AR at 47, 49], the ALJ's reliance on those opinions, without properly considering the opinion of Dr. Alfonso, is inadequate.  See Lester, 81 F.3d at 830-31 (the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Nguyen, 100 F.3d at 1464 (ALJ erred in failing to explicitly reject an opinion and set forth specific, legitimate reasons for crediting another opinion).

The ALJ's failure to provide legally sufficient reasons that are supported by substantial evidence for discounting Dr. Alfonso's opinion regarding plaintiff's mental condition warrants remand.  See Embrey, 849 F.2d at 422 (in disregarding the findings of an examining physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson v. Barnhart, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the

1  matter for 'proper consideration of the physicians' evidence.'") (brackets in original) (citation

2  omitted).

3      Plaintiff further contends that "the ALJ improperly considered [p]laintiff's depression to be

4  non-severe." Joint Stip. at 7-8.  A "severe" impairment, or combination of impairments, is defined

5  as one that significantly limits physical or mental ability to do basic work activities.  See 20 C.F.R.

6  §§ 404.1520, 416.920.  Despite use of the term "severe," most circuits, including the Ninth Circuit,

7  have held that "the step-two inquiry is a de minimis screening device to dispose of groundless

8  claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S.

9  at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing

10 at level two that he or she has a severe impairment has been described as 'de minimis'"); see also

11 Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when

12 there is no more than minimal effect on ability to work).  In light of the Court's conclusion that the

13 ALJ failed to properly consider the opinion of Dr. Alfonso concerning plaintiff's mental condition,

14 the ALJ is instructed on remand to reconsider the severity of plaintiff's mental impairment at step

15 two of the sequential analysis.  Accordingly, remand is warranted.[9]

16

17                                   **VI.**

18                    **REMAND FOR FURTHER PROCEEDINGS**

19      As a general rule, remand is warranted where additional administrative proceedings could

20 remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

21 Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

22 In this case, remand is appropriate in order to properly consider the opinion of Dr. Alfonso.  The

23 ALJ is instructed to take whatever further action is deemed appropriate and consistent with this

24 decision.

25 _____

26 [9]  As the ALJ's consideration on remand of Dr. Alfonso's opinion may impact the
   remaining issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not
27 to address those issues at this time.  However, the Court notes that it appears that the ALJ's
   consideration of the testimony of plaintiff and plaintiff's friend was proper for the reasons set forth by
28 defendant in the Joint Stipulation.  Joint Stip. at 12-15, 17-18.

1    Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

2    (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

3    for further proceedings consistent with this Memorandum Opinion.

4    **This Memorandum Opinion and Order is not intended for publication, nor is it**

5    **intended to be included or submitted to any online service such as Westlaw or Lexis.**

6

7

8    DATED: May 28, 2009

_____

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE